DMITRY SHKIPIN (*pro se*)
support@homeopenly.com
325 Sharon Park Dr. #416
Menlo Park, CA 94025
Telephone: 650.281.6962

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Arizona Regional Multiple Listing Service, Inc. et al.<br>Plaintiffs,<br><br>v.<br><br>Compass, Inc.<br>Defendant. | Case No.: 1:26-cv-09253<br><br>**GEODOMA'S STATEMENT IN SUPPORT OF NEITHER PARTY**<br><br>Judge: Hon. Mary Kay Vyskocil |

## STATEMENT

Your Honor, I already filed an amicus brief in the related case CRMLS v. Compass, 1:26-cv-08796 (S.D.N.Y. Oct. 8, 2026) (Doc. 8), and the same information applies here. However, I also want to point out something that may or may not be self-evident: ***Why are (6) different MLSs filing this lawsuit as one?***

### A. MLSs and Online Listing Platforms Markets

Arizona Regional Multiple Listing Service, Inc., BridgeMLS, Inc., Carolina Multiple Listings Services, Inc. d/b/a Canopy MLS, Metrolist, Inc. d/b/a REcolorado, North Carolina Regional MLS, LLC d/b/a Hive MLS, Triangle MLS, Inc. d/b/a Doorify MLS maintain regional monopolies in their own regional markets with a long-standing unspoken agreement to refrain from competition. NAR controls these regional MLSs with common rules. This is why massive $225 billion class action antitrust lawsuits against NAR's anticompetitive rules (settled for about $1 billion) united all NAR-affiliated MLS Participants under a common price-fixing conspiracy.

Historically, this regional market allocation is a consequence of the fact that real estate is local (a real estate professional working in New York hardly ever does business in San Francisco). This is why none of these (6) MLSs are worried about the fact that NAR's Clear Cooperation Policy prevents any of the other (6) MLSs from entering the market to meaningfully compete with the incumbent MLSs (none of these (6) MLSs care to compete with one another). This does not apply to ***new*** innovative nationwide MLSs and listing platforms entrants.

More recently, all Legacy MLSs have also engaged in homes-for-sale listing syndication with all major online real estate portals. In Geodoma's Statement in Support of Neither Party Zillow v. MRED 1:26-cv-05451 (N.D. Ill. Jul. 14, 2026) (Doc. 132), I point out how these *de facto* non-compete IDX data-feed-sharing agreements between Legacy MLSs and MLS Aggregators (Zillow, Realtor.com, Homes.com) allow Legacy MLSs to maintain 95% control

over all listings inputs. Legacy MLSs KNOW that a single unified nationwide MLS can easily disrupt their local monopolies under the aggregate power of nationwide network effects. When Zillow/Trulia proposed such nationwide system in 2006, all Legacy MLSs quickly made "a deal with the devil" to supply Zillow with their IDX listing inputs (in exchange for Zillow not accepting homes-for-sale listings directly from real estate brokers).

### B. RESPA-banned Referral Platforms and NAR-affiliated MLSs Undisclosed IPCs Fraud

Same as CRMLS, these (6) Legacy MLSs claim to provide "transparency" and better/open access and more choices - but none of it adds up.

Since 2018, Zillow and Realtor.com use Legacy MLSs IDX access to collect ~40% RESPA-banned kickbacks from so-called Partner Agents. Further, since August 17, 2024, NAR-affiliated MLSs subject all buyer broker MLS Participants to GSEs' Undisclosed IPCs fraud. See Gibson v. NAR 4:23-cv-00788-SRB (Doc. 930) Geodoma's Statement in Support of Consumers.

Compass now attempts to delay listing syndication to NAR-affiliated MLSs with a 3PM marketing strategy, in part, to counter the fact that Legacy MLSs give IDX access to "paper" brokerage Referral Platforms that use listings to divert homebuyers to Partner Agents in exchange for ~40% RESPA-banned kickbacks. For instance, since April of 2026, Zillow Preview has begun to display early access listings directly from real estate brokers (Zillow is not a *bona fide* brokerage, so NAR's illegal CCP does not even apply them). To entice brokers into submitting their listings early into Preview, Zillow creates an opportunity for listing agents to earn a payment from Zillow equal to 10% of the buyer agent's commission (as an unlawful split of an unlawful RESPA-banned ~40% Zillow Preferred (Flex) "success fee"). See Zillow v. MRED 1:26-cv-05451 (N.D. Ill. May 13, 2026) (Doc. 17) Geodoma's Amicus Curiae Brief in Support of Neither Party.

In graphic form (the schematic below is taken from the <u>Taylor et al.</u> RESPA class action pleadings, with my commentary added as an overlay), Zillow Preview looks like this:




*Zillow Flex referrals are unable to meet 12 U.S.C. § 2607(c)(3) and 12 U.S.C. § 2607(c)(4) RESPA exemptions. However, only Consumers/Government with Article III standing are able to raise Section 8 of RESPA claim against Zillow. See <u>Taylor v. Zillow, Inc. Order re: Motion to Dismiss 2:25-cv-01818-JLR (W.D. Wash. Jul. 27, 2026) (Doc. 102)</u>*

Also, under the GSEs' IPC Guidelines (post-Settlement) all NAR-affiliated MLS Participants MUST itemize their buyer-paid commissions on the Borrower side of the HUD-1 Settlement Statement (where all buyer-paid closing fees legally belong) until the terms of the Settlement expire in 2031. Post-settlement, NAR-affiliated MLS Participants lie to homebuyers locked into mandated Buyer Broker Agreements (BBAs), and simply tell them: *"Don't worry about it – we will just bake your 3% Buyer-paid commission cost into the purchase offer – and it does not count against you."* Buyers do not KNOW that this false "does not count against you" notion also means that NAR-affiliated MLS Participants subject them to mortgage fraud. See Gibson v. NAR 4:23-cv-00788-SRB (W.D. Mo. Aug. 7, 2026) (Doc. 936).

### C. Referral Platforms and NAR-affiliated MLSs Maintain a Firm Hold on the Brokerage Industry

In 2026, the industry operates under ***a series*** of broken practices:

(1) "[NAR's] Clear Cooperation Policy prevented innovative competitors from entering the market and growing large enough to meaningfully compete with the MLSs, leaving both buyers' agents and sellers' agents with fewer choices, supra-competitive prices, and lower quality products." The PLS.com, LLC v. National Association of Realtors 32 F.4th 824, 839 (9th Cir. 2022)

(2) Compass "Private Exclusive" marketing where ~6% of homes that sell at a 2.9% premium is also a cost borne by Compass' buyer clients, who overpay for homes by about $200 million a year. (See: https://www.hbsslaw.com/cases/chicago-home-prices-antitrust )

(3) Zillow Preview implicates listing agents with a 10% unlawful split of an unlawful RESPA-banned ~40% Zillow Preferred (Flex) "success fee" is also passed down to Consumers with overinflated real estate commissions. See Taylor v. Zillow, Inc., 2:25-cv-01818 (W.D. Wash. Oct. 6, 2025) (Doc. 7); Waller v. Rocket Companies, Inc., 2:26-cv-10270 (E.D. Mich.

Apr. 10, 2026) (Doc. 17); Peyton v. Veterans United Home Loans et al, 2:26-cv-04039 (W.D. Mo. May 6, 2026) (Doc. 35)

(4) Since August 17, 2024, NAR-affiliated MLSs and NAR-affiliated MLS Participants knowingly lie about GSEs' IPC limits applicability toward buyer-paid commissions of NAR-affiliated MLS Participants real estate brokerages imposed upon by the terms of the Gibson et al. antitrust settlement with home sellers. IPCs are contributions made by third parties with a vested interest in the transaction to cover costs that are the buyer's responsibility. Since August 17, 2024, NAR-affiliated MLS Participants have been knowingly baking in buyer-paid closing costs into federally-funded loans as seller-paid commissions outside GSEs IPCs caps.

There are three ongoing Referral Platforms RESPA class action lawsuits. There is also a federal court precedent in my lawsuit with HomeLight that established that an agent-matching Referral Platform and Partner Agents "are not acting as horizontal competitors …" where "… real estate agents [are] referral platform's "intermediate" consumers …" HomeLight, Inc. v. Shkipin, 694 F. Supp. 3d 1242, 1250 (N.D. Cal. 2023) (this designation firmly precludes 12 U.S.C. 2607(c)(3) safe harbor applicability for any of the Referral Platform's referrals). Under RESPA, paying kickbacks for lead generation is illegal, but, as of today, not a single major brokerage in America says that that they will stop shelling out RESPA-banned success fees into dozens of Referral Platforms (e.g., Zillow Flex, Realtor-Opcity, Rocket Homes, Clever Real Estate, OJO, HomeLight, etc.) In 2025 (instead of stopping paying illegal kickbacks into agent-matching Referral Platforms), eXp Realty created a new single-page referral fee disclosure form (Source: https://www.housingwire.com/articles/exp-realty-new-disclosure-forms/ ) for agents to inform clients about these kickbacks. As this Court is well aware, a mere disclosure of an illegal kickback is not a remedy for a violation under Section 8 of RESPA. This written disclosure

potentially limits the tolling of the statute of limitations, but the Consumer is still subjected to RESPA-banned ~40% kickback eXp Realty agent gives to a lead-gen Referral Platform (only fee divisions within *bona fide* real estate brokerage arrangements when all parties act in a real estate brokerage capacity are legal under RESPA).

This is why it is not enough to just offer brokers a lawful platform as an alternative. Lawful platforms face an absurd reality of having to sue ALL major brokerages for injunctive relief (under UCL/UDAP state statutes) to force them into overall compliance.

For instance, Compass litigated with Zillow to stop it from restricting 3PM pre-marketed listings, yet Compass CEO Robert Reffkin also admitted on LinkedIn that they KNOW that Zillow is *"hiding a steep 40% commission referral fee that inflates home prices."* (Source: https://litesand.wordpress.com/2026/06/29/compass-review-respa-rico-fraud-read-warning/ ) Logically, a major brokerage like Compass should be rejecting Zillow's and NAR-affiliated MLSs illegal services, but they are doing the opposite. Despite the active litigation and animosity against Zillow, Compass continues to shell out RESPA-banned kickbacks into Zillow Preferred (Flex) and StreetEasy Experts. Compass KNOWS that these 40% success fees are illegal, and they still do it.

On October 20, 2026, Geodoma sent a Civil Demand to Compass, Inc. (Compass International Holdings, including @properties, Better Homes and Gardens Real Estate, CENTURY 21, Christie's International Real Estate, Coldwell Banker, Compass, Corcoran, ERA and Sotheby's International Realty) to Cease and Desist from Engaging in (1) False Advertising, (2) Unlawful Steering, (3) RESPA-banned Kickbacks, (4) Racketeering, (5) Price Fixing, (6) GSE's Undisclosed IPCs Fraud, and (7) Fiduciary Duties Fraud Against Homebuyers (See: https://litesand.wordpress.com/wp-content/uploads/2026/10/compass-cease-and-desist-letter-

october-20-2026.pdf ) but I am not going to hold my breath for Compass to comply with this Demand (because it requires Compass to come clean about the fact that they are violating RESPA, Sherman Act, False Claims Act, FTC Act, and fiduciary duties to clients).

This hold on the industry is so strong that lawful platforms MUST litigate with our broker-customers under UCLs/UDAPs to force them into compliance with the law, just so that we may plausibly conduct business with them.

**D. Courts Must Carefully Navigate Our Broken Real Estate Industry**

Your Honor, please imagine a hypothetical vehicle manufacturer that sold millions of cars with defective airbags and harmed many people. A subsequent lawsuit and settlement required them to stop installing airbags in all their vehicles (instead, this hypothetical settlement required each vehicle purchaser to install and pay for airbags separately). After the settlement, this vehicle manufacturer asks NHTSA (National Highway Traffic Safety Administration): "We sold cars with airbags installed for many years. May our customers continue to drive our cars post-settlement lawfully?" and gets a blunt reply: "Any cars with airbags installed may be lawfully driven." This NHTSA confirmation is factually true. The vehicle manufacturer turns this reply around and says: "We got an explicit confirmation from NHTSA that ***our cars*** may be lawfully driven." On August 17, 2024, these notorious airbag-less cars are sold to all major car rental companies. These car rental companies KNOW that these cars have no airbags installed, but they don't want to pay for these installations (after all, NHTSA ***confirmed*** that these cars may be lawfully driven, right?) As a result of this hypothetical conspiracy, innocent customers would be renting cars out without airbags. A defect issue is one thing, but intent to commit fraud through falsification is an entirely different thing.

This is what NAR-affiliated MLSs have done with a very real and non-hypothetical ***false*** claim that GSEs made *"explicit confirmations that commissions for buyer agents paid by the*

*seller would not count against the buyer [IPC limits]"* when working with NAR-affiliated MLS Participants buyer brokers post-settlement. No such guidance exists. GSEs merely correctly confirmed the existing guidance that strictly applies to closing costs paid by a seller (i.e., costs that are the seller's responsibility) *"are not subject to the IPC limits."* (Source: https://singlefamily.fanniemae.com/media/38706/display ). Mortgages with undisclosed IPCs are not eligible for sale to Fannie Mae. This is why "nothing has changed" in how commissions are paid and also why commissions have gone UP since the NAR settlement took effect in 2024. NAR, NAR-affiliated MLSs, and NAR-affiliated MLS Participants assert "transparency," but they actually sell concealment and falsification. This massive fraud is happening right now.

This Court must be vigilant: (1) Referral Platforms overinflate commissions by $15 billion every year; and (2) since August 17, 2024, NAR-affiliated MLS Participants' buyer-paid commissions undisclosed IPCs are on track to become the largest mortgage fraud in history. For a working solution, we must: (1) advance lawful platforms; and (2) prevent unlawful platforms from being used. If the industry does not want to change, we must not try to change it; we must advance the impediment, the barrier itself, because it is real, it exists, and verifiable facts support it. When we take control of this barrier, we take control of the truth hidden behind it; when we move this obstruction forward, truth never moves with it. Every barrier is a temporary force.

Thank you for your time,

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 26, 2026

*/s/ Dmitry Shkipin*

Dmitry Shkipin, pro se