ROBINSON BRADSHAW

600 S. Tryon St.
Suite 2300
Charlotte, NC 28202

Greg Skidmore
GSkidmore@rbh.com
T: 704.377.8144

November 18, 2026

**BY ECF FILING**

The Honorable Mary Kay Vyskocil
United States District Court Judge
United States District Court, Southern District of New York
500 Pearl Street, New York, New York 10007

**Re: *Arizona Regional Multiple Listing Service, Inc., et al. v. Compass, Inc.*, No. 1:26-cv-09253-MKV [related to No. 1:26-cv-08796-MKV] (S.D.N.Y.)**

Dear Judge Vyskocil:

Pursuant to Rule 4(A)(i) of Your Honor's Individual Rules, the plaintiffs in the above-captioned case (collectively, the "MLS Parties") respond to Compass, Inc.'s November 13, 2026 letter (ECF No. 30). From its New York headquarters, Compass planned and executed a nationwide campaign against MLS rules that require cooperation from a broker if that broker wants access to the MLS's listings database ("Cooperation Rules"). Compass's motions disregard this entirely and seek to splinter one dispute across multiple courts, thereby creating massive inefficiencies and duplication of effort. The motions should be denied.

## I. Background

In September 2026, Compass sent substantively identical letters demanding that numerous MLSs stop enforcing their Cooperation Rules or face federal antitrust claims. ECF No. 28 ¶¶ 62–72. Compass greatly mischaracterizes the discussions that followed, and its implication that the discussions were not held in good faith is false. What Compass tellingly omits is that Compass lawyers made clear there was no room for negotiation—the MLS Parties must either abandon the Cooperation Rules (and receive a toothless "release" that provided no protection) or face the perpetual threat of an antitrust lawsuit, without any indication of when or where such litigation would be filed.

The MLS Parties were not willing to live under a constant threat of litigation, especially because Compass already had sued one MLS (CRMLS). On October 21, the six MLS Parties filed this action seeking a declaration that their Cooperation Rules are lawful under Section 1 of the Sherman Act and state-law analogues. ECF No. 1. On October 30, another MLS joined this action. ECF No. 28. On November 12, Compass sued fifteen MLSs in fifteen separate actions in eleven districts, including the MLS Parties and three MLSs that never received a demand letter.[1]

[1] *Compass, Inc. v. Arizona Regional Multiple Listing Service, Inc.*, No. 2:26-CV-10493 (D. Ariz.); *Compass, Inc. v. Bay East Ass'n of Realtors*, No. 4:26-cv-13653 (N.D. Cal.); *Compass, Inc. v. BridgeMLS, Inc.*, No. 4:26-cv-13647 (N.D. Cal.); *Compass, Inc. v. Carolina Multiple Listing Services, Inc.*, No. 3:26-cv-00971 (W.D.N.C.); *Compass, Inc. v. Combined L.A./Westside MLS, Inc.*, No. 2:26-cv-13239 (C.D. Cal.); *Compass, Inc. v. Contra Costa Ass'n of Realtors*, No. 4:26-cv-13655 (N.D. Cal.); *Compass, Inc. v. Triangle MLS, Inc.*, No. 5:26-cv-00906 (E.D.N.C.); *Compass, Inc. v. North Carolina Regional MLS, L.L.C.*, No. 7:26-cv-00450 (E.D.N.C.); *Compass, Inc. v. Houston Realtors Information Service, Inc.*, No. 4:26-cv-09930 (S.D. Tex.); *Compass, Inc. v. MLSListings Inc.*, No. 5:26-cv-13652 (N.D. Cal.); *Compass, Inc. v. Regional Multiple Listing Service of Minnesota, Inc.*, No. 0:26-cv-04807 (D. Minn.); *Compass, Inc. v. OneKey MLS LLC*, No. 2:26-cv-07323 (E.D.N.Y.); *Compass, Inc. v. Metrolist, Inc.*, No. 1:26-cv-06027 (D. Colo.); *Compass, Inc. v. San Diego Multiple Listing Service, Inc.*, No. 3:26-cv-06446 (S.D. Cal.);

## II. The Court should exercise jurisdiction over this action.

Compass does not dispute jurisdiction over this action under *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007); it asks the Court to decline it. But this action is not an improper anticipatory filing, and jurisdiction in this District is in the interests of justice and judicial economy.

The Declaratory Judgment Act lets a party "threatened . . . in the enjoyment of what he claims to be his rights" "initiate the proceedings against his tormentor." *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 92 (2d Cir. 2023) (citation omitted). "By its nature, a declaratory judgment action is filed in anticipation of litigation." *Paul Revere Life Ins. Co. v. Segal*, No. 99 CIV. 3022 (MBM), 2000 WL 1448626, at *4 (S.D.N.Y. Sept. 28, 2000). Whether it is *improperly* anticipatory depends on the circumstances leading to suit. *See id.* Here, those circumstances support retaining jurisdiction.

***First,*** the MLS Parties did not race Compass to the courthouse. *See Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008). Compass's demand letters did not give "actual notice of litigation" such as by indicating a filing date or forum. *See Abovepeer, Inc. v. Recording Indus. Ass'n of Am., Inc.*, 166 F. Supp. 2d 655, 658 (N.D.N.Y.), *aff'd sub nom. BuddyUSA, Inc. v. Recording Indus. Ass'n of Am., Inc.*, 21 F. App'x 52 (2d Cir. 2001). Indeed, Compass has admitted to this Court that, as of the day after the MLS Parties filed this action, Compass had "not decided whether to file any other cases." *Cal. Reg'l Multiple Listing Serv., Inc. v. Compass, Inc.*, No. 1:26-cv-08796-MKV (S.D.N.Y.) ("*CRMLS*"), ECF No. 11 at 2.

***Second,*** the MLS Parties did not take away Compass's choice of forum. Improper forum shopping requires "manipulative or deceptive behavior" or ties that are "tenuous or de minimis." *Wausau*, 522 F.3d at 275–76. The MLS Parties sued Compass where it is headquartered, ECF No. 28 ¶¶ 17, 20, and where Compass itself has chosen to litigate its own Cooperation Rules–related suit, *see Compass, Inc. v. Zillow, Inc.*, No. 1:25-cv-05201 (S.D.N.Y.).

***Third***, a declaration would settle the controversy. *Admiral*, 57 F.4th at 99–100. It would bind Compass on the central question in every case: whether an MLS may require that a publicly marketed listing be shared with the cooperative without violating the antitrust laws. Meanwhile, Compass's campaign to litigate the same question in many districts would not serve judicial economy. *See Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir. 1978).

## III. The Court should retain this action rather than sever and transfer claims to districts across the country.

Compass alternatively asks this Court to sever and transfer the MLS Parties' claims. Compass bears the burden of showing that severance is "required to avoid prejudice or confusion and to promote the ends of justice," *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 25 (S.D.N.Y. 2016) (citation omitted), and that transfer is warranted by "clear and convincing evidence," *Nuss v. Guardian Life Ins. Co. of Am.*, 2021 WL 1791593, at *2 (S.D.N.Y. May 5, 2021). It cannot meet either burden.

---

*Compass, Inc. v. My Florida Regional MLS, Inc.*, No. 6:26-cv-02651 (M.D. Fla.). Bay East, Contra Costa, and Regional MLS of Minnesota did not receive demand letters.

***First,*** the claims arise out of the same "series of transactions or occurrences" and present common questions of law or fact. Fed. R. Civ. P. 20(a)(1). As to each MLS Party, Compass challenges a requirement that listings be submitted to the MLS if they are publicly marketed. Compass has indicated that the cases share common facts and claims. *Compass, Inc. v. Metrolist, Inc.*, No. 1:26-cv-06027 (D. Colo.), ECF No. 3. Compass's authorities are inapposite. *See Kalie v. Bank of America Corp.*, 297 F.R.D. 552, 554 (S.D.N.Y. 2013) (distinguishing fifty-two plaintiffs suing sixteen defendants from suits against "a single defendant" over a common wrong); *Wyndham Associates v. Bintliff*, 398 F.2d 614, 618–19 (2d Cir. 1968) (severing parties "only indirectly connected" to primary dispute).

***Second,*** the 28 U.S.C. § 1404(a) factors do not favor transfer. The MLS Parties' choice of forum deserves deference. Compass relies on *Iragorri*, but that court held that a plaintiff suing "where the defendant has established itself" is not ordinarily seeking "tactical disadvantage." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001) (en banc). Indeed, "the greater the degree to which [plaintiff] has chosen a forum where [defendant's] witnesses and evidence are to be found, the harder it should be for [defendant] to demonstrate inconvenience." *Id.* at 75. A defendant asking to leave its own home district is making "an unusual request." *Nuss*, 2021 WL 1791593, at *6. And transfer would split the plaintiffs among many districts.

Other factors are neutral. Compass has not shown any "indication that nonparty witnesses would refuse to appear," *Nuss*, 2021 WL 1791593, at *7, and Compass's executives reside in New York, *see CRMLS*, ECF No. 15 at 2. Nor is any other district the locus of operative facts: Compass's campaign originated at its New York headquarters and reached nationwide. Where a dispute has multiple loci, the factor is neutral. *Chamber of Com. v. James*, 2025 WL 2586436, at *5 (S.D.N.Y. Sept. 8, 2025).

Finally, judicial economy weighs against transfer. "Litigation of related claims in the same tribunal is strongly favored" because splitting the actions would mean that "judicial resources will have to be allocated to two actions when one court could more efficiently dispose of the litigation." *Cali v. E. Coast Aviation Servs., Ltd.*, 178 F. Supp. 2d 276, 295 (E.D.N.Y. 2001). Here, transfer would create seven suits in five districts, each replicating Compass's evidence. Courts need not indulge an "onslaught of litigation," as seen in cases in which plaintiffs brought "thirteen separate cases in four different forums." *Major League Baseball Props., Inc. v. Price*, 105 F. Supp. 2d 46, 55–56 (E.D.N.Y. 2000).

No stay is warranted here at this time based on Compass's request. Compass identifies no burden beyond the ordinary obligation to respond to a complaint. The MLS Parties respectfully request that the Court deny the motions.

Respectfully submitted,

*/s/ Gregory L. Skidmore*
Gregory L. Skidmore
*Counsel for Plaintiffs*

**cc: Chambers (via VyskocilNYSDChambers@nysd.uscourts.gov)**
**Counsel of Record (via ECF)**